### PRENTISS v. EISNER, Internal Revenue Collector.*

(Circuit Court of Appeals, Second Circuit.   June 16, 1920.)

No. 189.

1. **Taxation ☞856—Death duties generally levied on right to transmit estate.**
   Death duties, by whatever name they may be known and by whatever means collectible, are as a general rule levied on the right to transmit the estate, not on the right to take the estate transmitted.

2. **Courts ☞370—Construction of state statute by United States Supreme Court, not modified by state court, is binding.**
   The construction by the United States Supreme Court of the New York Inheritance Tax Law then in force, which has not been disclaimed by any subsequent decision of the New York Court of Appeals, is binding as to the construction of a later tax law having no substantial difference from the one there construed.

3. **Internal revenue ☞7—Taxation ☞856—New York transfer tax is levied on estate, and not deductible from income.**
   The New York Transfer Tax Act, under which the tax is a lien on the estate payable by the executor or administrator but deducted from the legacies, is a tax on the right to transmit property, not a tax payable by the legatee, and therefore no deduction for the payment of such tax can be made in the income tax return pursuant to Act Oct. 3, 1913, § 2.

In Error to the District Court of the United States for the Southern District of New York.

Action by Elizabeth S. Prentiss against Mark Eisner, Collector of Internal Revenue, Third District of New York. Judgment for defendant (260 Fed. 589), and plaintiff brings error. Affirmed.

Sullivan & Cromwell, of New York City (Eustice Seligman and Philip L. Miller, both of New York City, of counsel), for plaintiff in error.

Francis G. Caffey, U. S. Atty., of New York City (Vincent H. Rothwell, Sp. Asst. U. S. Atty., of New York City, of counsel), for defendant in error.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

ROGERS, Circuit Judge. This is an action to recover from the defendant the sum of $7,432.88, with interest, which amount the plaintiff alleges she was wrongfully compelled to pay to the defendant as collector of internal revenue. It appears that the plaintiff and her then husband, since deceased, filed with the defendant a joint return of their net income for the year 1913, pursuant to the act of Congress approv-

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 254 U. S. —, 41 Sup. Ct. 15, 65 L. Ed. —.

ed October 3, 1913. U. S. St. at L. vol. 38, pt. I, c. 16, § II, p. 166. The aforesaid act of Congress, in paragraph B, p. 167, provided as follows:

"That, subject only to such exemptions and deductions as hereinafter allowed, the net income of a taxable person shall include gains, profits, and income * * * including * * * but not the value of property acquired by gift, bequest, devise, or descent. * * *

"That in computing net income for the purpose of the normal tax there shall be allowed as deductions: * * * Third, all national, state, county, school, and municipal taxes paid within the year, not including those assessed against local benefits."

And in paragraph D, p. 168, it provided as follows:

"The said tax shall be computed upon the remainder of said net income of each person subject thereto, accruing during each preceding calendar year ending December thirty-first: Provided, however, that for the year ending December thirty-first, nineteen hundred and thirteen, said tax shall be computed on the net income accruing from March first to December thirty-first, nineteen hundred and thirteen, both dates inclusive, after deducting five-sixths only of the specific exemptions and deductions herein provided for."

It appears, too, that in the year 1913 the plaintiff inherited a portion of her father's estate, and that on the inheritance thus received by her the state of New York assessed against her an inheritance tax of $259,805.71, which amount she paid on December 11, 1913. The plaintiff, in making her income return under the act of Congress, included therein as a deduction five-sixths of the inheritance tax which she had paid to the state of New York, which amounted to $216,504.75. This deduction was not allowed by the Commissioner of Internal Revenue, and he levied and assessed against her an additional tax of $7,287.14.

Thereafter the plaintiff, acting, as she alleges, under duress, paid the additional tax, which with interest, amounted to $7,432.88. Thereupon she instituted this action to recover back the amount so paid. The complaint was demurred to, upon the ground that it did not state facts sufficient to constitute a cause of action. The court below sustained the demurrer, and dismissed the complaint.

The question of law thus presented is whether the payment by the plaintiff of the inheritance tax to the state of New York was a proper deduction from her income tax return for the year 1913. That is the sole question herein involved. The plaintiff's contention is that the inheritance tax which she paid to the state of New York was a tax paid to a state, and therefore under act of Congress the plaintiff was entitled to make the deduction of five-sixths of the amount so paid in making her income return.

The Commissioner of Internal Revenue, in making the ruling to which reference has been made, stated that:

"A collateral inheritance tax levied under the laws of the state of New York, being, as it is, a charge against the corpus of the estate, does not constitute such an item as can be allowed as a deduction in computing income tax liability to either the estate or a beneficiary thereof."

The District Judge, in sustaining the demurrer, stated that he did not regard the New York Transfer Tax Act "as imposing a tax upon the

plaintiff's right of succession which is deductible in her income tax return." The material provisions of the New York Transfer Tax Act (Consol. Laws, c. 60) may be found in the margin.[1]

The right to dispose of property by will is statutory. The matter has always been recognized as within the legislative control. In the reign of Henry II (1154–1189) a man's personal property was, at his death, divided into three equal parts, if he died leaving a wife and children; one part went to his wife, another to his children, and only the remaining third could be disposed of by his will. And, at least after the establishment of the feudal system, and prior to the enactment of the statute of wills, 32 Henry VIII, the right to make a will of real estate was not known to the English law.

There has been and still is a difference of opinion among courts as to the exact nature of an inheritance tax. It is generally agreed that such a tax is not upon the property or money bequeathed. The dispute is over the question whether the tax is laid on the privilege of transmitting property or on the privilege of receiving the property so transmitted. The right to transmit and the right to receive are distinct, and each is alike under the legislative control. The distinction between

---

[1] The New York act reads as follows, in section 220 of article X: "A tax shall be and is hereby imposed upon the transfer of * * * property * * * to persons or corporations in the following cases: * * * (1) When the transfer is by will or by the intestate laws of this state; * * * (4) when the transfer is * * * by deed * * * intended to take effect in possession or enjoyment at or after such death. * * * The tax imposed hereby shall be upon the clear market value of such property, at the rates hereinafter prescribed."

Section 224 reads as follows: "*Lien of Tax and Collection by Executors, Administrators and Trustees.*—Every such tax shall be and remain a lien upon the property transferred until paid and the person to whom the property is so transferred, and the executors, administrators and trustees of every estate so transferred shall be personally liable for such tax until its payment. Every executor, administrator or trustee shall have full power to sell so much of the property of the decedent as will enable him to pay such tax in the same manner as he might be entitled by law to do for the payment of the debts of the testator or intestate. Any such executor, administrator or trustee having in charge or in trust any legacy or property for distribution subject to such tax shall deduct the tax therefrom and shall pay over the same to the state comptroller or county treasurer, as herein provided. If such legacy or property be not in money, he shall collect the tax thereon upon the appraised value thereof from the person entitled thereto. He shall not deliver or be compelled to deliver any specific legacy or property subject to tax under this article to any person until he shall have collected the tax thereon. If any such legacy shall be charged upon or payable out of real property, the heir or devisee shall deduct such tax therefrom and pay it to the executor or administrator or trustee, and the tax shall remain a lien or charge on such real property until paid; and the payment thereof shall be enforced by the executor, administrator or trustee, in the same manner that payment of the legacy might be enforced, or by the district attorney under section two hundred and thirty-five of this chapter. If any such legacy shall be given in money to any such person for a limited period, the executor, administrator or trustee shall retain the tax upon the whole amount, but if it be not in money, he shall make application to the court having jurisdiction of an accounting by him, to make an apportionment, if the case require it, of the sum to be paid into his hands by such legatees, and for such further order relative thereto as the case may require."

the right to transmit and the right to receive is important, and upon the distinction depends the right to deduct or not to deduct the amount of the tax in the income return submitted to the federal government.

The Circuit Court of Appeals in the Third Circuit has recently decided Lederer v. Northern Trust Co., 262 Fed. 52. In that case the question arose as to the right to deduct a tax paid under the Collateral Inheritance Tax Act of the state of Pennsylvania. The answer to be given to that question depended upon whether the Pennsylvania tax was an estate tax, the burden of which was imposed upon the estate of a decedent, as claimed by the executors, or was a legacy tax, the burden of which was imposed upon the legatee or beneficiary. It happened that the Supreme Court of Pennsylvania in Jackson v. Myers, 257 Pa. 104, 101 Atl. 341, L. R. A. 1917F, 821, had squarely decided that the collateral inheritance tax of that state was not levied upon an inheritance or legacy, but upon the estate of the decedent, and had held that what passed to the legatee was simply the portion of the estate remaining after the state had been satisfied by receiving the tax. The Circuit Court of Appeals held that the decision of the Supreme Court of Pennsylvania, construing the inheritance tax law of that state, was binding on the federal courts, and that inasmuch as the tax was held by that court as a tax on the estate, and not a tax on the inheritance, the amount of the tax so paid was properly deductible in computing the net estate under the act of Congress of September 8, 1916. Under a like state of facts we should have no difficulty in reaching a like conclusion. But the case with which we are dealing presents a different question, involving as it does the Tax Law, not of Pennsylvania, but of New York.

[1] In 1900 the Supreme Court in Knowlton v. Moore, 178 U. S. 41, 20 Sup. Ct. 747, 44 L. Ed. 969, had under consideration a tax imposed under the War Revenue Act of June 13, 1898 (30 Stat. 448). The opinion in that case is exhaustive and occupies about 70 pages. It deals with the subject of death duties and sustains the constitutional right of Congress to impose death duties. In the course of the opinion, which was written by Justice (now Chief Justice) White, it was said:

"Thus, looking over the whole field, and considering death duties in the order in which we have reviewed them—that is, in the Roman and ancient law, in that of modern France, Germany, and other continental countries, in England and those of her colonies where such laws have been enacted, in the legislation of the United States and the several states of the Union—the following appears: Although different modes of assessing such duties prevail, and although they have different accidental names, such as probate duties, stamp duties, taxes on the transaction, or the act of passing of an estate or a succession, legacy taxes, estate taxes or privilege taxes, nevertheless tax laws of this nature in all countries rest in their essence upon the principle that death is the generating source from which the particular taxing power takes its being and that it is the power to transmit, or the transmission from the dead to the living, on which such taxes are more immediately rested."

It thus appears as the opinion of the court that in general death duties are imposed on the power to transmit. However, the immediate question with which we are now concerned is whether the so-called

tax which the New York law has imposed, and which is herein involved, is a tax upon the power to transmit, or is laid on the power to receive.

[2] In 1889 a testator resident within the state of New York died, and devised and bequeathed all his estate, both real and personal, to the government of the United States. The Surrogate's Court imposed an inheritance tax upon the personal property. The case was taken on appeal to the General Term of the Supreme Court of New York, and later to the New York Court of Appeals, by each of which it was affirmed. It was then taken to the Supreme Court of the United States, by which it was in like manner affirmed. The question was whether the personal property bequeathed to the United States was subject to an inheritance tax under the laws of New York. The Supreme Court held the property to be subject to the tax. United States v. Perkins, 163 U. S. 625, 16 Sup. Ct. 1073, 41 L. Ed. 287. In the course of its opinion the court said:

"In this view, the so-called inheritance tax of the state of New York is in reality a limitation upon the power of a testator to bequeath his property to whom he pleases; a declaration that, in the exercise of that power, he shall contribute a certain percentage to the public use; in other words, that the right to dispose of his property by will shall remain, but subject to a condition that the state has a right to impose. Certainly, if it be true that the right of testamentary disposition is purely statutory, the state has a right to require a contribution to the public treasury before the bequest shall take effect. Thus the tax is not upon the property, in the ordinary sense of the term, but upon the right to dispose of it, and it is not until it has yielded its contribution to the state that it becomes the property of the legatee."

And the court went on to say:

"That the tax is not a tax upon the property itself, but upon its transmission by will or by descent, is also held, both in New York and in several other states."

We find no case in the subsequent decisions of the New York Court of Appeals in which that court disclaims the construction placed by the Supreme Court of the United States on the New York decisions, or in any way qualifies or overrules the proposition that the "tax" under the New York law is not one upon the property, but is one upon the right to dispose of it by will or by descent. In the absence of such a decision it seems to be our duty to follow the law as it is laid down in the Perkins Case, unless there can be found in the New York statute in force when the present tax was laid some substantial difference from the statute in force when that case was decided in the particular now being considered. If such a difference exists, we have failed to detect it, and learned counsel have failed to point out in what it consists. The New York Court of Appeals in 1919, in Matter of Watson, 226 N. Y. 384, 399, 123 N. E. 758, 763, in discussing a provision in the New York Inheritance Tax Law (section 221b, c. 60, Consol. Laws) imposing a tax upon the transfer of property at the time of death which had not theretofore paid any tax, local or state, said:

"The beneficiary has no claim to the property of an ancestor except as given by law, and, if the state has a right to impose a tax at all upon the passing of property, the transferee takes only what is left after the tax is paid."

The opinion quotes (226 N. Y. at page 396, 123 N. E. 762) from the opinion of the Supreme Court of the United States in the Perkins Case, supra, that under the New York law the inheritance tax is not upon the property, but upon the right to dispose of it. There is not one word of criticism, not one word of dissent, and not the slightest suggestion of disapproval of that proposition anywhere in the opinion.

In Matter of Penfold, 216 N. Y. 163, 167, 110 N. E. 497, 498 (Ann. Cas. 1916A, 783), the New York court declares what it had several times before stated, that "the transfer tax is not a tax upon property but upon the right of succession to property." The language of the statute is that the tax is "due and payable at the time of the transfer"; that is, at the death of the decedent. It accrues at that time.

[3] Now a succession tax is a tax upon a transfer of property in general, and as such is distinguishable from a legacy duty, which is a tax upon a specific bequest. Under the New York law the succession tax creates a lien upon the estate of the decedent at the moment of his death. The right of the state to the amount of this lien attaches at that time, and it must be paid before the transferee, legatee, or devisee ever gets anything, and the executor or administrator is personally liable for the tax until it has been paid. Under such a law we do not see that the transferee pays the tax. In stating this conclusion we have not overlooked what was said in the Matter of Gihon, 169 N. Y. 443, 447, 62 N. E. 561, 562, where it is said that—

"Though the administrator or executor is required to pay the tax, he pays it out of the legacy for the legatee, not on account of the estate. The requirement of the statute that the executor or administrator shall make the payment is prescribed to secure such payment, because the government is unwilling to trust solely to the legatee."

The fact, however, remains that if a legacy left by a will is $10,000, and the executor has paid to the state on its account a tax of $500, and then has turned over to the legatee $9,500, the legatee has received, not $10,000, but $9,500, and the legatee has been enriched only to the extent of the amount which he has himself received, and he has not paid the tax, nor has it been paid by his authority, nor by any one representing him. The payment has been made by the personal representative of the deceased, and in making it he has acted under authority of the statute. As was said by Judge Gray in Matter of Swift, 137 N. Y. 77, 32 N. E. 1096, 18 L. R. A. 709:

"What has the state done, in effect by the enactment of this tax law? It reaches out and appropriates for its use a portion of the property at the moment of its owner's decease, allowing only the balance to pass in the way directed by the testator, or permitted by its intestate law."

We admit that the New York cases on the subject of taxable transfers are confused and not always clear and consistent. But, until the New York Court of Appeals authoritatively states that the law of New York is not what the Supreme Court of the United States said it was in the Perkins Case, this court has no alternative but to hold that the New York Transfer Tax Act does not impose a tax on a legatee's right of succession which is deductible in her income tax return. The legacy which the plaintiff herein received under the will of her father

did not become her property until after it had suffered a diminution to the amount of the tax, and the tax that was paid thereon was not a tax paid out of the plaintiff's individual estate, but was a payment out of the estate of her deceased father of that part of his estate which the state of New York had appropriated to itself, which payment was the condition precedent to the allowance by the state of the vesting of the remainder in the legatee.

Judgment affirmed.